Electronically Filed
Supreme Court
SCWC-18-0000922
09-MAR-2023
08:30 AM
Dkt. 11 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR
MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-NC4,
Respondent/Plaintiff-Appellee,

vs.

BLAINE T. YATA,
Petitioner/Defendant-Appellant,

and

BROOKE J.C. RIOPTA; AMBER M. RIOPTA; CASIE A. RIOPTA,
and COUNTY OF KAUAI WASTEWATER MANAGEMENT, Defendants.

---

SCWC-18-0000922

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000922; CIV. NO. 5CC141000185)

MARCH 9, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

## I.   INTRODUCTION[1]

This case arises from a foreclosure proceeding.  On August 10, 2022, Petitioner/Defendant-Appellant Blaine T. Yata (Yata) filed an application for writ of certiorari challenging the Intermediate Court of Appeals' (ICA) July 11, 2022 Judgment on Appeal entered pursuant to its June 9, 2022 Summary Disposition Order.  The ICA affirmed the Circuit Court of the Fifth Circuit's (circuit court) July 19, 2018 Order Granting Motion for Summary Judgment and November 1, 2018 Order Denying Motion for Reconsideration.

On or about March 24, 2006, Yata executed a note and mortgage to New Century Mortgage Corporation, and the mortgage was later assigned to Respondent/Plaintiff-Appellee Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-NC4 (Deutsche Bank).[2]  After Yata defaulted on the note, Deutsche Bank filed a complaint to foreclose the mortgage.  Deutsche Bank asserted that it was entitled to possession of the note, which was endorsed in blank.

Deutsche Bank subsequently filed a Motion for Summary Judgment, arguing it established all material allegations in the

_____

[1]   This opinion was originally filed as a memorandum opinion on February 22, 2023.  Pursuant to this court's March 9, 2023 Order Granting Yata's Motion for Publication, the memorandum opinion is filed as a published opinion.

[2]   Deutsche Bank's parent company is Deutsche Bank National Trust Company.

2

complaint and there were no genuine issues of any material fact. Attached to Deutsche Bank's Motion for Summary Judgment was a declaration, along with exhibits, purporting to demonstrate Deutsche Bank's possession of the note when the complaint was filed. The circuit court granted Deutsche Bank's Motion for Summary Judgment. Yata filed a Motion for Reconsideration, arguing that Deutsche Bank failed to establish its standing to foreclose as required by this court's decision in Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 390 P.3d 1248 (2017). Deutsche Bank opposed Yata's Motion for Reconsideration by filing another declaration purporting to establish Deutsche Bank's possession of the note when the complaint was filed. The circuit court denied Yata's Motion for Reconsideration.

Yata appealed and the ICA affirmed the circuit court's Order Granting Motion for Summary Judgment and Order Denying Motion for Reconsideration. The ICA determined that, pursuant to this court's decision in U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Verhagen, 149 Hawaiʻi 315, 489 P.3d at 419 (2021), as amended (July 6, 2021), reconsideration denied, No. SCWC-17-000746, 2021 WL 2948836 (Haw. July 9, 2021), Deutsche Bank produced sufficient evidence to establish its standing to foreclose.

On certiorari, Yata asserts that the ICA grievously erred by misinterpreting Verhagen. Yata argues that there was

3

no "admissible documentary evidence" demonstrating Deutsche Bank had possession of the note when it filed the complaint. Yata's argument appears to have merit because the ICA misapplied Verhagen in determining that Deutsche Bank's documents were admissible. Moreover, even if the documents were admissible, those documents did not establish that Deutsche Bank had possession of the note when it filed the complaint. Thus, Deutsche Bank did not establish it had standing to foreclose.

Accordingly, we vacate the ICA's July 11, 2022 Judgment on Appeal, which affirmed the circuit court's Order Granting Motion for Summary Judgment and Order Denying Motion for Reconsideration.

## II. BACKGROUND

### A. Factual Background

On or about March 24, 2006, Yata executed an "Adjustable Rate Balloon Note" (the Note) to New Century Mortgage Corporation. That same day, to secure the Note, Yata signed and delivered a mortgage (the Mortgage), which encumbered property located on the Island of Kauaʻi (the mortgaged property), to New Century Mortgage Corporation. On August 25, 2008, the Mortgage was assigned to Deutsche Bank (the Assignment).

4

**B.    Circuit Court Proceedings**[3]

**1.    Deutsche Bank's Complaint**

On September 10, 2014, Deutsche Bank filed a "Complaint to Foreclose Mortgage" (the Complaint).[4]  Deutsche Bank alleged that it had standing to bring the Complaint as the current holder of the Note, that it was entitled to possession of the Note, and that the Note was endorsed in blank.  Deutsche Bank maintained that Yata defaulted on the payment of the principal and interest on the Note as of March 1, 2010.  Deutsche Bank asserted that it was entitled to foreclosure on the Mortgage and to a sale of the mortgaged property.

On November 24, 2014, Yata filed a pro se answer to the Complaint and requested that the Complaint be dismissed with prejudice.

**2.    Deutsche Bank's Motion for Summary Judgment**

Nearly four years later, on April 17, 2018, Deutsche Bank filed a Motion for Summary Judgment and for Interlocutory Decree of Foreclosure (Motion for Summary Judgment).  Deutsche Bank argued that it was entitled to foreclose the Mortgage because it established all material allegations in the Complaint and there was no genuine issue of any material fact.  Deutsche

---

[3]    The Honorable Randal G.B. Valenciano presided.

[4]    Deutsche Bank attached as exhibits to its Complaint, inter alia, a copy of the Note, a copy of the Mortgage, and a copy of the Assignment.

5

Bank attached a declaration from Matthew Mountes (Mountes Declaration) to its Motion for Summary Judgment.[5]  As relevant here, the Mountes Declaration provided:

> 1.    I am authorized to sign this declaration on behalf of [Deutsche Bank], as an officer or employee of Specialized Loan Servicing LLC ("SLS"), which is [Deutsche Bank]'s loan servicing agent ("servicer") for the subject loan ("the Loan").
> 2.    The information in this declaration is taken from SLS's business records.  I have personal knowledge of SLS's procedures for creating these records.  They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of SLS's regularly conducted business activities; and (c) it is the regular practice of SLS to make such records.
> 3.    The owner of the Note and Mortgage for a particular a [sic] mortgage loan is commonly referred to in the loan servicing industry as the Investor.  The Investor for this mortgage loan is [Deutsche Bank].
> 4.    SLS maintains all the day to day loan documents, records and accounting of payments on the Loan being foreclosed in this action including all documents and business records acquired by [Deutsche Bank] when it purchased the subject mortgage loan.
> 5.    Under the terms of SLS's servicing arrangement, [Deutsche Bank] does not participate in, keep and maintain any of the day to day loan documents, inputting of accounting data, saving of business records and all communications with borrowers.
> 6.    [Deutsche Bank] as the Investor, has a passive role with the primary emphasis on tracking its return on investment.  In terms of routine business records on the Loan, SLS acts as the sole custodian of [Deutsche Bank]'s records.
> 7.    Based upon my occupational experience, I know that loan servicers follow an industry wide standard on how to keep and maintain business records on the loan services performed in their portfolio which recordkeeping is part of the regularly conducted activity of loan servicers.  The type of and regular maintenance of loan information including the accounting under generally accepted

---

[5]    Attached to the Mountes Declaration were true and correct copies of: (1) the Note and the Allonges; (2) the Mortgage; (3) the Loan Modification Agreement; (4) the Assignment; (5) the notice sent to Yata regarding the default; (6) the Payment History for the Loan; (7) a printout that shows Yata defaulted on the Loan, the default has was not cured, and the amount owed; and (8) a Certification of Possession of Original Promissory Note.

principles for each mortgage loan is standard and computerized.

. . . .

11. Finally, the loan servicer records, maintains and takes custody of all such daily business records and all loan documents, including taking possession of the note and mortgage records on behalf of the Investor.

12. A portion of the business records for the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into SLS's systems, such that the prior servicer's records concerning the Loan are now part of SLS's business records. SLS maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records. It is the regular business practice of SLS to integrate prior servicers' records into SLS's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SLS as part of SLS's business records. True and correct copies of records I have reviewed and relied upon in executing this affidavit are attached to this affidavit and incorporated herein.

13. SLS became [Deutsche Bank]'s loan servicer for the Loan being foreclosed in this action on November 1, 2016. The prior loan servicers for this mortgage loan were America's Servicing Company and Wells Fargo Bank, N.A.

. . . .

15. [Deutsche Bank], directly or through an agent, has possession of the Note. The Note has been duly endorsed in blank. [Deutsche Bank] is the assignee of the security instrument for the subject loan. [Deutsche Bank] has the right to foreclose the subject note and mortgage.

. . . .

28. At the time the foreclosure Complaint was filed in this case, [Deutsche Bank], directly or through an agent, was in possession of the Note. A true and correct copy of the "Certification of Possession of Original Promissory Note" is attached hereto as Exhibit "8".

The circuit court orally granted Deutsche Bank's Motion for Summary Judgment, which was unopposed, at a hearing on June 26, 2018.[6]

---

[6] Yata's counsel appeared at a previous hearing on the Motion for Summary Judgment on May 24, 2018, noted "he was retained last Friday," and requested "a continuance to file an opposition." The circuit court set a continued hearing for June 26, 2018. Yata's counsel did not file an opposition or appear at the June 26, 2018 continued hearing.

3. **The Circuit Court's Findings of Fact and Conclusions of Law and Judgment**

On July 19, 2018, the circuit court issued "Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment as Against All Defendants and for Interlocutory Decree of Foreclosure" (Order Granting Motion for Summary Judgment).[7]  The circuit court noted that Deutsche Bank appeared at the hearing on the Motion for Summary Judgment, and Yata did not appear.

The circuit court found, <u>inter alia</u>, that (1) the Mortgage was assigned to Deutsche Bank on August 25, 2008, (2) Yata defaulted on the Note, and (3) Deutsche Bank was the owner and holder of the Note and Mortgage.  The circuit court granted the Motion for Summary Judgment, concluding that Deutsche Bank was entitled to a foreclosure on the Mortgage and to a judgment as a matter of law on the Complaint.

4. **Yata's Motion for Reconsideration**

Yata had previously filed a "Motion for Rehearing and/or Reconsideration of this Court's Decision Granting 'Plaintiff's Motion for Summary Judgment as Against All Defendants and for Interlocutory Decree of Foreclosure'" (Motion for Reconsideration) on July 3, 2018.

---

[7]     That same day, the circuit court issued its corresponding Judgment.

Citing to Reyes-Toledo and Hawai'i Revised Statutes (HRS) §§ 490:3-201 and 490:3-301, Yata maintained that Deutsche Bank did not offer admissible evidence that it possessed the Note when the Complaint was filed.[8]  Yata contended that the Mountes Declaration, which was attached to Deutsche Bank's Motion for Summary Judgment, contained inadmissible hearsay and did not establish Deutsche Bank's standing.  Citing to Hawai'i Rules of Evidence (HRE) Rule 602 and U.S. Bank N.A. v. Mattos, 140 Hawai'i 26, 398 P.3d 615 (2017), Yata maintained that Mountes' testimony was based on his review of SLS's business records, which failed to demonstrate "the requisite element of personal knowledge with respect to Wells Fargo's business records, especially [Deutsche Bank]'s purported possession of the original note at the time the Complaint was filed, or ever."  Yata asserted that Mountes never saw the original Note or witnessed the Note in Deutsche Bank's possession.  Yata maintained that Mountes instead relied on "his review of a copy of an unverified 'certificate' (Exhibit 8 to [the Motion for Summary Judgment]), wherein an individual named Patrick A. Timmers alleges that Wells Fargo had possession of the original note on December 18, 2013."  Yata argued that Deutsche Bank did

---

[8]     Yata pointed out that Deutsche Bank presented the circuit court with a purported copy of the Note and an allonge stamped with an endorsement.

9

not demonstrate who possessed the Note when the Complaint was filed on September 10, 2014.

In addition, Yata noted that Mountes stated he reviewed Deutsche Bank's "business records and files related to the mortgage loan herein, including the purported copy of the 'Certification of Possession of Original Promissory Note' signed by Timmers on December 18, 2013" (the Certification). According to Yata, Mountes' review of the Certification from a prior loan servicer did not establish Mountes' personal knowledge that Deutsche Bank possessed the original Note. Yata thus argued that Mountes' testimony was inadmissible double hearsay.

Yata asserted that Mountes' statement and the Certification were "not admissible under the business records exception to the hearsay rule," which can only be satisfied if "the business record referred to by the testifying witness was produced, is offered as evidence, and meets the necessary criteria under HRE Rule 803(b)(6),[9] and is authenticated by a

---

[9]    Hawai'i Rules of Evidence Rule 803(b)(6) (2002) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (b) Other exceptions.
>
> . . . .
>
> (6) Records of regularly conduced activity. A memorandum, report, record, or data compilation, in any form, acts, events, conditions, opinions, or diagnoses,

qualified witness in accordance with HRE Rule 901 or 902(11)."
Yata also contended that Mountes' statement, based on his review
of the Certification, was not a business record. Yata
maintained that even if Mountes could properly authenticate
business records from the prior servicer, Wells Fargo, the
business records did not demonstrate that Deutsche Bank
possessed the Note when it filed the Complaint.

According to Yata, Deutsche Bank only produced a copy
of the purported Note and the Certification, which was signed by
Timmers before the Complaint was filed in 2013. Yata maintained
that HRE Rule 803(b)(6) only admits records of regularly
conducted activity and the Certification was "not a verified and
trustworthy record of regularly conducted activity." Yata
argued that the Certification was "clearly a document that was
prepared in anticipation of litigation, which is inadmissible."
Yata maintained that Deutsche Bank "failed to produce any
admissible evidence demonstrating" it possessed or was entitled
to enforce the Note when the Complaint was filed, and thus

---

made in the course of a regularly conducted activity, at or
near the time of the acts, events, conditions, opinions, or
diagnoses, as shown by the testimony of the custodian or
other qualified witness, or by certification that complies
with rule 902(11) or a statute permitting certification,
unless the sources of information or other circumstances
indicate lack of trustworthiness.

Deutsche Bank did not establish its standing to foreclose the Mortgage.

### a.    Deutsche Bank's Supplemental Opposition

On September 21, 2018, Deutsche Bank filed a supplemental memorandum in opposition to Yata's Motion for Reconsideration.[10]  Attached to Deutsche Bank's supplemental memorandum was a "Declaration Regarding Location of the Note" from Mark McCloskey (the McCloskey Declaration).[11]  As relevant here, the McCloskey Declaration provided:

> 1.    I am authorized to sign this declaration on behalf of [Deutsche Bank], as an officer or employee of Specialized Loan Servicing LLC ("SLS"), which is [Deutsche Bank]'s loan servicing agent ("servicer") for the subject loan ("the Loan").
> 2.    The information in this declaration is taken from SLS's business records.  I have personal knowledge of SLS's procedures for creating these records.  They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of SLS's regularly conducted business activities; and (c) it is the regular practice of SLS to make such records.  I am familiar with SLS's record-keeping system.
> 3.    The owner of the Note and Mortgage for a particular a [sic] mortgage loan is commonly referred to in the loan servicing industry as the Investor.  The Investor for this mortgage loan is [Deutsche Bank].

---

[10]    Deutsche Bank previously filed a memorandum in opposition to Yata's Motion for Reconsideration on July 27, 2018.  Deutsche Bank contended that the Motion for Reconsideration should be denied because Yata did not "present new evidence or arguments that could not have been presented during the earlier adjudicated" Motion for Summary Judgment.  In support of this argument, Deutsche Bank noted that Yata's counsel appeared at the May 24, 2018 Motion for Summary Judgment hearing and requested a continuance to file an opposition, but at the June 26, 2018 continued hearing, Yata or his counsel did not appear and no opposition had been filed.

[11]    Deutsche Bank's counsel also submitted a declaration which stated that counsel would bring the original endorsed Note to the October 2, 2018 Motion for Reconsideration hearing.  It appears Deutsche Bank's counsel did not bring the original endorsed Note to the hearing.

12

4. SLS maintains all the day to day loan documents, records and accounting of payments on the Loan being foreclosed in this action including all documents and business records acquired by [Deutsche Bank] when it purchased the subject loan.

5. Under the terms of SLS's servicing arrangement, [Deutsche Bank] does not participate in, keep and maintain any of the day to day loan documents, inputting of accounting data, saving of business records and all communications with borrowers.

6. [Deutsche Bank], as the Investor, has a passive role with the primary emphasis on tracking its return on investment. In terms of routine business records on the Loan, SLS acts as the sole custodian of [Deutsche Bank]'s records. [Deutsche Bank]'s records were received by SLS and incorporated into SLS's records. SLS relies upon the accuracy of these records in providing its loan servicing functions. [Deutsche Bank]'s records are relied upon by SLS as part of SLS's business records. I am familiar with the record-keeping system of [Deutsche Bank].

7. Based upon my occupational experience, I know that loan servicers follow an industry wide standard on how to keep and maintain business records on the loan services performed in their portfolio which record-keeping is part of the regularly conducted activity of loan servicers. The type of and regular maintenance of loan information including the accounting under generally accepted principles for each mortgage loan is standard and computerized.

. . . .

11. Finally, the loan servicer records, maintains and takes custody of all such daily business records and all loan documents, including taking possession of the note and mortgage records on behalf of the Investor.

12. A portion of the business records for the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into SLS's systems, such that the prior servicer's records concerning the Loan are now part of SLS's business records. SLS maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records. It is the regular business practice of SLS to integrate prior servicers' records into SLS's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SLS as part of SLS's business records. I am familiar with the record-keeping systems that prior servicers used to create and record information related to residential mortgage loans that it serviced, including the process by which information was entered into those systems and how those records were maintained. True and correct copies of records I have reviewed and relied upon in executing this affidavit are attached to this affidavit and incorporated herein.

13

13. On or about March 24, 2006, Defendant BLAINE T. YATA executed a promissory note ("Note") in the amount of $420,000.00. A true and correct copy of the endorsed Note and the Allonges are attached hereto as Exhibit "1".

14. At the time the foreclosure Complaint was filed on September 10, 2014, [Deutsche Bank], through its custodian Deutsche Bank National Trust Company, was in possession of the Note. The Note was kept by the custodian at 1761 E. St. Andrew Place, Santa Ana, CA 92705 on behalf of [Deutsche Bank]. The original date of possession of the Note by the custodian was April 4, 2006. The Note had been returned to the custodian on December 27, 2013. The custodian maintained possession of the Note until May 8, 2015. A true and correct copy of the documentation supporting Note possession at the time of the filing of the Complaint is attached hereto as Exhibit "2".

15. The Note, which is endorsed in blank, is currently being held by Law Offices of Marvin S.C. Dang, LLLC for [Deutsche Bank].

### b. Yata's Reply

On September 27, 2018, Yata filed a reply to Deutsche Bank's supplemental memorandum in opposition to the Motion for Reconsideration. Yata noted the McCloskey Declaration claimed that Deutsche Bank was in possession of the Note when the Complaint was filed on September 10, 2014. Yata argued that such statement was inadmissible hearsay. Yata contended that even if Deutsche Bank possessed the Note when the Complaint was filed, the McCloskey Declaration did not offer evidence demonstrating that the Note was endorsed at that time.

Yata argued that Deutsche Bank attempted "to invoke the business records exception to the hearsay rule" by presenting "a document marked as Exhibit 2," which were screenshots allegedly demonstrating Deutsche Bank's possession of the Note when the Complaint was filed.

14

Yata contended that the McCloskey Declaration lacked the necessary foundation to admit Exhibit 2 into evidence. Yata further contended that

> Although [McCloskey] claims that Exhibit "2" is the record he relied upon to determine that [Deutsche Bank] was the holder of the note at the time the complaint was filed, it is impossible for any reasonable person viewing the document to reach the same conclusion. McCloskey offers no explanation as to what any of the items of that document mean, or when, where, why, and how those alleged entries were made. McClosk[e]y does not even point to a single entry on that document that purports to evidence [Deutsche Bank]'s possession of the indorsed promissory note. Without any such foundational testimony from McClsok[e]y, Exhibit "2" offered as a business record for the purpose of demonstrating [Deutsche Bank]'s possession of the note at the time the Complaint was filed, lacks trustworthiness. Nowhere does that document even reference the subject mortgage note. Nor is there any testimony as to when Exhibit "2" was generated. The document itself is dated August 29, 2018, long after the Complaint was filed herein. As such, Exhibit "2", lacking foundation and trustworthiness, is not admissible under the business records exception to the hearsay rule.

Thus, Yata maintained that his Motion for Reconsideration should be granted because Deutsche Bank did not establish its standing.

### c.    The Circuit Court's Order

On November 1, 2018, the circuit court issued an Order Denying Motion for Reconsideration, concluding that Deutsche Bank possessed the Note when the Complaint was filed.

## C.    ICA Proceedings

### 1.    Opening Brief

On November 30, 2018, Yata filed a notice of appeal. Yata filed an opening brief on April 10, 2019. Yata raised one point of error on appeal, arguing that Deutsche Bank did not establish its standing to foreclose and thus the circuit court

erroneously granted Deutsche Bank's Motion for Summary Judgment and erroneously denied Yata's Motion for Reconsideration. Yata repeated the arguments he made before the circuit court in his Motion for Reconsideration and reply to Deutsche Bank's supplemental memorandum in opposition to Yata's Motion for Reconsideration.

### 2. Answering Brief

Deutsche Bank filed an answering brief on June 19, 2019. Deutsche Bank contended that the circuit court properly granted "the Motion for Summary Judgment because the Note was endorsed prior to the filing of the Complaint and Plaintiff was in possession."[12]

Deutsche Bank pointed out that the Mountes Declaration was signed by Mountes, a Second Assistant Vice President at SLS, Deutsche Bank's loan servicer. Deutsche Bank noted that the Mountes Declaration states that Deutsche Bank, directly or through an agent, possessed the Note when the Complaint was filed.

According to Deutsche Bank, the instant case is distinguishable from Reyes-Toledo. Deutsche Bank argued that in this case, "the blank indorsement of the Note occurred prior to the initiation of the suit." Deutsche Bank noted that "[t]he

---

[12] Deutsche Bank also argued that Yata's appeal should be dismissed pursuant to Hawai'i Rules of Appellate Procedure Rules 28 and 30.

endorsed Note was attached to the Complaint." Deutsche Bank asserted that it possessed the Note, "through its custodian Deutsche Bank National Trust Company," when it filed the Complaint. Deutsche Bank thus contended that it had standing to foreclose when the Complaint was filed.

Deutsche Bank further argued that the circuit court properly denied Yata's Motion for Reconsideration. Deutsche Bank repeated the arguments it made in the memorandum in opposition to Yata's Motion for Reconsideration. In addition, Deutsche Bank noted that the McCloskey Declaration stated:

> 14.   At the time the foreclosure Complaint was filed on September 10, 2014, [Deutsche Bank], through its custodian Deutsche Bank National Trust Company, was in possession of the Note. The Note was kept by the custodian at 1761 E. St. Andrew Place, Santa Ana, CA 92705 on behalf of Plaintiff. The original date of possession of the Note by the custodian was April 4, 2006. The Note had been returned to the custodian on December 27, 2013. The custodian maintained possession of the Note until May 8, 2015. A true and correct copy of the documentation supporting Note possession at the time of the filing of the Complaint is attached hereto as Exhibit "2."

According to Deutsche Bank, Exhibit 2 supports the information in paragraph 14 of the McCloskey Declaration. Deutsche Bank asserted that its custodian, Deutsche Bank National Trust Company, possessed "the Note from December 27, 2013 until May 8, 2015" and thus Deutsche Bank possessed the Note when the Complaint was filed.

Citing to State v. Fitzwater, 122 Hawai'i 354, 365-68, 227 P.3d 520, 531-34 (2010), as amended (Apr. 5 2010), Deutsche

17

Bank maintained that the McCloskey Declaration laid a sufficient foundation and the business records attached to the McCloskey Declaration were admissible under HRE Rule 803(b)(6).  Deutsche Bank also contended that Yata did not "provide any specific facts showing that the records in question are unreliable and untrustworthy."

### 3.   ICA Summary Disposition Order

The ICA issued a Summary Disposition Order on June 9, 2022.  As an initial matter, the ICA pointed out that a hearing on the Motion for Summary Judgment was set for May 24, 2018, where Yata's counsel requested a continuance to file an opposition.  The ICA noted that no opposition to the Motion for Summary Judgment was filed, and neither Yata nor his counsel appeared at the June 26, 2018 continued hearing.  The ICA determined that "to the extent that Yata contends – based on hearsay objections that were not raised in response to the Motion for Summary Judgment – that the Circuit Court erred in entering the [Order Granting Motion for Summary Judgment] . . . , Yata's arguments are without merit" because those objections were waived.[13]

---

[13]   Although the ICA did not err when it concluded that Yata's argument was meritless based on waiver, this court will address Yata's arguments on certiorari because Deutsche Bank did not raise a waiver argument, the circuit court addressed the Motion for Reconsideration's substantive issues, and the ICA discussed U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Verhagen, 149 Hawai'i 315, 489 P.3d 419 (2021), as amended (July 6, 2021),

The ICA went on to note that the circuit court considered the issue of standing at the Motion for Reconsideration stage.  Citing to this court's decision in Verhagen, the ICA determined that

> Here, with the Motion for Summary Judgment, Deutsche Bank submitted, inter alia, a declaration of Matthew Mountes (Mountes), Second Assistant Vice President of Specialized Loan Servicing LLC (SLS), loan servicer for Deutsche Bank; and in conjunction with its response to the Motion for Reconsideration, Deutsche Bank submitted, inter alia, a declaration of Mark McCloskey (McCloskey), Assistant Vice President of SLS, both attesting to their personal review and knowledge of SLS's records, including incorporated records.  With careful consideration of the supreme court's directives in Verhagen, and upon review of the evidence presented by Deutsche Bank, we conclude that Mountes and McCloskey were qualified witnesses with personal knowledge of SLS's procedures for creating its records, including its procedures for incorporation of records of other businesses into SLS's records, and SLS's reliance on those records and maintenance of those records in the course of its regularly-conducted business activities, after a pre-incorporation process of quality control and verification procedures.  Although indicia of trustworthiness are not profuse, we conclude that the record provides sufficient indicia of trustworthiness, including with respect to the evidence that the Note was in the possession of Deutsche Bank, through its custodian Deutsche Bank National Trust Company, at the time the foreclosure complaint was filed.  Thus, we conclude that the Circuit Court did not err or abuse its discretion in denying the Motion for Reconsideration and rejecting Yata's argument that Deutsche Bank did not have standing to foreclose on the subject property.

Thus, the ICA affirmed the circuit court's Order Granting Motion for Summary Judgment and Order Denying Motion for Reconsideration.  The ICA issued its corresponding Judgment on Appeal on July 11, 2022.

---

reconsideration denied, No. SCWC-17-0000746, 2021 WL 2948836 (Haw. July 9, 2021) when affirming the circuit court.

## D.    Application for Writ of Certiorari

Yata filed a timely application for writ of certiorari on August 10, 2022.  Yata asserts that the ICA erroneously interpreted this court's decision in Verhagen for two reasons.

First, Yata argues that the ICA erroneously held that Deutsche Bank established it had possession of the Note when the Complaint was filed because (a) there was no "admissible documentary evidence" of possession, and (b) Deutsche Bank did not demonstrate how it was connected to the custodian, Deutsche Bank National Trust Company.[14]

Yata argues that the instant case is distinguishable from Verhagen.  Yata contends that the Mountes and McCloskey Declarations contain conclusory statements regarding possession of the Note at the time the Complaint was filed.  According to Yata, the only documentary evidence that Deutsche Bank possessed the Note was Exhibit 2 to the McCloskey Declaration.  Yata maintains that Exhibit 2 is an inadmissible screenshot.  Citing to Wells Fargo Bank, N.A. v. Fong, 149 Hawaiʻi 249, 488 P.3d 1228 (2021), Yata asserts that "the screenshot is not self-explanatory and McCloskey's statements about what this shows are conclusory."  Yata maintains that the McCloskey Declaration does

---

[14]    Yata maintains that "a parent corporation and its wholly-owned subsidiary are separate and distinct legal entities" and standing must be proven by Deutsche Bank rather than Deutsche Bank's parent company.

not state "what entity the screenshot belongs to, and whether [McCloskey] is familiar with the record-keeping of the entity." Yata contends that Exhibit 2 refers to a custodian "but does not state where the Note is." Yata asserts that the screenshots were not admissible documentary evidence pursuant to Verhagen.

Second, Yata maintains that the ICA erroneously held that the "qualified witness" doctrine applied to the screenshots because "(a) Deutsche Bank National Trust Company was not the lender or a prior loan servicer, and (b) it was not shown what entity created or maintained the screenshot."

Yata argues that the ICA did not analyze the three factors, which were set forth in Verhagen and Wells Fargo Bank, N.A. v. Behrendt, 142 Hawaiʻi 37, 414 P.3d 89 (2018), to determine "whether [Mountes and McCloskey] were qualified witnesses." Yata contends that although McCloskey states that SLS received and incorporated business records into SLS's records, McCloskey "does not make this statement for the screenshot attached as Exhibit 2 to his declaration." Yata maintains that "stating what a screenshot is without authenticating the screenshot does not meet the admissibility requirements for such evidence."

Citing to Verhagen, Yata contends that the McCloskey Declaration does not explain McCloskey's familiarity "with the record-keeping system that produced the screenshot" or "state

21

how an SLS employee would have knowledge of the records of Deutsche Bank National Trust Company." According to Yata, Deutsche Bank's only evidence of possession of the Note was "a screenshot that purports to show that Deutsche Bank National Trust Company had possession of the Note" when the Complaint was filed. Yata reiterates that Deutsche Bank did not explain how it was related to Deutsche Bank National Trust Company and the only documentary evidence showing Deutsche Bank possessed the Note when the Complaint was filed was an inadmissible screenshot.[15]

### III. DISCUSSION

**A. Yata correctly argues that Deutsche Bank failed to establish standing.**

Yata largely cites to this court's decision in Verhagen[16] in support of his argument that Deutsche Bank lacked standing because Deutsche Bank did not prove it had possession of the Note at the time it filed the Complaint. Specifically, Yata maintains that Deutsche Bank did not produce "admissible documentary evidence" that it had possession of the Note when the Complaint was filed, and that screenshots submitted by

---

[15] Deutsche Bank did not file a response.
[16] The briefing in this appeal was completed in 2019 and this court's decision in Verhagen was published in 2021. Consequently, the parties did not cite to Verhagen in the briefings before the ICA. However, the ICA relied on Verhagen in its Summary Disposition Order to affirm the circuit court's Order Granting Motion for Summary Judgment and Order Denying Motion for Reconsideration. Thus, Verhagen is relevant to the instant application for writ of certiorari.

Deutsche Bank were inadmissible under the "qualified witness" doctrine.

In Verhagen, Patrick Verhagen (Verhagen) owned real estate (the Property) and executed a note, secured by a mortgage on the Property, in favor of Washington Mutual. Verhagen, 149 Hawai'i at 317, 489 P.3d at 421. The mortgage was assigned to U.S. Bank. Id. Caliber Home Loans, Inc. (Caliber) was U.S. Bank's loan servicer, and JPMorgan Chase previously serviced the loan. Id. at 317-18, 489 P.3d at 421-22.

After Verhagen defaulted on the note, U.S Bank filed a foreclosure complaint in the Circuit Court of the Second Circuit, and attached a Verification by Caliber employee Julia Jackson. Id. at 318, 489 P.3d at 422. Jackson was familiar with Caliber's records and how those records were maintained, and verified U.S. Bank possessed the original note. Id.

U.S. Bank subsequently filed a Motion for Summary Judgment and Interlocutory Decree of Foreclosure (MSJ). Id. U.S. Bank supported its MSJ with a declaration from Alyssa Salyers, a foreclosure document specialist at Caliber (Salyers Declaration). Id. In the Salyers Declaration,

> Salyers declared she was familiar with both Caliber's business records concerning the Note and the manner in which Caliber maintains those records. Salyers also declared she had inspected a copy of the Note maintained by Caliber. She attached a "true and correct" copy of the Note to her declaration. She further declared that Caliber's records concerning the Note include records incorporated from the prior loan servicer, JPMorgan Chase.

23

> The records obtained from JPMorgan Chase, Salyers,
> declared, are "kept and maintained by Caliber in the
> ordinary course of its business for the purpose of
> maintaining an accounting of payments received, expenses
> incurred, and amounts advanced with regard to the Subject
> Loan, and such records are relied upon by Caliber in the
> regular course of its business."

Id. Verhagen filed an opposition to U.S. Bank's MSJ, contending that "U.S. Bank could not establish standing under [Reyes-Toledo]." Id. The circuit court disagreed and granted U.S. Bank's MSJ. Id.

After Verhagen appealed, the ICA remanded the case so U.S. Bank could "supplement the record in light of Reyes-Toledo and [Mattos]." Id. (footnote omitted). Then, "[o]n remand, U.S Bank moved for ratification of the circuit court's prior judgment." Id. at 319, 489 P.3d at 423. Verhagen raised jurisdictional objections "but did not substantively oppose the motion to ratify." Id. U.S. Bank's motion to ratify was accompanied by a supplemental declaration from Melinda Patterson, a Caliber employee (Patterson Declaration). Id. Patterson stated she "was familiar with both Caliber's books and records concerning the Note and the manner in which Caliber maintains its books and records." Id. The Patterson Declaration further provided:

> Caliber's records include and incorporate records for
> the Loan obtained from [JPMorgan Chase] ("Prior Servicer"),
> the prior loan servicer for the Loan. The records obtained
> by Caliber from the Prior Servicer are kept and maintained
> by Caliber in the ordinary course of its business for the
> purpose of maintaining an accounting of payment received,
> expenses incurred, and amounts advanced with regard to the
> Loan, and such records are relied upon by Caliber in the

24

> regular course of its business.  The information regarding the Loan transferred to Caliber from the Prior Servicer has been validated in many ways, including but not limited to, going through a due diligence phase, review of hard copy documents, and review of the payment history and accounting of other fees, costs, and expenses charged to the Loan by Prior Servicer.  It is Caliber's regular practice, after these phases are complete, to receive records from prior servicers and integrate these records into Caliber's business records at the time of acquisition.  Once integrated, Caliber maintains and relies on these business records in the ordinary course of its mortgage loan servicing business.

Id. (brackets in original).

Patterson also declared that U.S. Bank possessed the note when it filed its complaint against Verhagen:

> Plaintiff, or its agent on Plaintiff's behalf, was in possession of the original wet-ink, indorsed in blank Note when the above-captioned foreclosure action was commenced on March 23, 2016 and since [that time] . . . .
> My personal knowledge of these statements is derived from my having inspected Caliber's business records. Specifically, I researched Calber's business records, which includes "Certification" [sic] executed by Caliber employee, Jennifer Martin.  The "Certification" contained in Caliber's business records evidence [sic] that the original wet ink, indorsed in blank Note was in Caliber's possession on Plaintiff's behalf on February 9, 2016. Further, the "Certification" contained in Caliber's business records indicates that the original wet-ink Note was indorsed in blank no later than February 9, 2016, as the original wet-ink Note was electronically scanned and uploaded to Caliber's business records on or before February 9, 2016, and the scanned copy of the original wet-ink Note that was uploaded to Caliber's business records on or before February 9, 2016 contains a blank indorsement on page 6 of the Note.

Id. (brackets in original).  Jennifer Martin's certification was attached to the Patterson Declaration.  Id.  In addition, Patterson declared that there was a December 9, 2016 attorney's bailee letter agreement in Caliber's business records, and "that Caliber sent the letter to U.S. Bank's legal counsel on or

25

around that date along with the wet-ink indorsed-in-blank Note." Id. at 319-20, 489 P.3d at 423-24 (footnote omitted).

The circuit court issued amended findings of fact and conclusions of law, finding that U.S. Bank possessed the note when it filed the complaint. Id. at 320, 489 P.3d at 424. However, the ICA issued an amended summary disposition order vacating the circuit court's amended findings of fact and conclusions of law. Id. at 321, 489 P.3d at 425. The ICA determined U.S. Bank did not demonstrate it possessed the note when the complaint was filed and thus lacked standing. Id. (citation omitted). U.S. Bank filed an application for writ of certiorari. Id. at 323, 489 P.3d at 427. This court concluded that U.S. Bank had standing as required by Reyes-Toledo, vacated the ICA's amended summary disposition order, and affirmed the circuit court's granting of U.S. Bank's MSJ. Id. at 328, 489 P.3d at 432.

As discussed below, the instant case is distinguishable from Verhagen, and Deutsche Bank did not demonstrate it had possession of the Note when it filed the Complaint.

1. **Deutsche Bank's documentary evidence was inadmissible because there was insufficient testimony regarding circumstances of trustworthiness.**

Yata correctly argues that Deutsche Bank's documentary evidence that it possessed the Note was inadmissible. Unlike

26

the records in Verhagen, Deutsche Bank's records were inadmissible under HRE Rule 803(b)(6) because the Mountes and McCloskey Declarations did not sufficiently demonstrate circumstances of trustworthiness.

In Verhagen, this court pointed out that "HRE Rule 803(b)(6) establishes a hearsay exception for 'records of regularly conducted activity.'" Id. at 325, 489 P.3d at 429 (quoting HRE Rule 803(b)(6)). This court stated that "when an entity incorporates records prepared by another entity into its own records, they are admissible as business records of the incorporating entity provided that it relies on the records, there are other indicia of reliability, and the requirements of HRE Rule 803(b)(6) are otherwise satisfied." Id. (quoting Fitzwater, 122 Hawai'i 354, 367-68, 227 P.3d 520, 533-34).

This court noted when "it is appropriate to treat an incorporated record as 'created' by the receiving business:"

> Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies that [1] the documents were incorporated and kept in the normal course of business, [2] that the incorporating business typically relies upon the accuracy of the contents of the documents, and [3] the circumstances otherwise indicate the trustworthiness of the document.

Id. at 325-26, 489 P.3d at 429-30 (quoting Behrendt, 142 Hawai'i at 45, 414 P.3d at 97) (brackets in original). This court further noted that an incorporated record is admissible even

27

without testimony concerning its actual creation if the three conditions are satisfied. Id. at 326, 489 P.3d at 430.

As applied to the facts in Verhagen, this court determined that the first two requirements were satisfied:

> Patterson and Salyers both testified that JPMorgan Chase's records were incorporated into Caliber's own and kept and maintained by Caliber in the ordinary course of its business. They both further testified that Caliber used and relied on the incorporated records in the regular course of its loan servicing business. The first two requirements for the admission of incorporated records are thus satisfied.

Id. (footnote omitted).

With respect to the third requirement, this court noted that Salyers did not testify about circumstances indicating "the trustworthiness of the documents Caliber incorporated from JPMorgan Chase" but Patterson did because "Patterson declared that:"

> The information regarding the Loan transferred to Caliber from the Prior Servicer has been validated in many ways, including, but not limited to, going through a due diligence phase, review of hard copy documents, and review of the payment history and accounting of other fees, costs, and expenses charged to the Loan by Prior Servicer.

Id. This court determined that:

> Though scant, this testimony establishes circumstances indicating the trustworthiness of Caliber's incorporated records. It is evidence that before incorporating JPMorgan Chase's documents, Caliber reviewed hard copies of the documents, engaged in a "due diligence" process, and reviewed the payment history and accounting associated with the loan. JPMorgan Chase's documents were not, in other words, uncritically incorporated into Caliber's own. They were vetted by Caliber. This pre-incorporation vetting, however nebulously described by Patterson's testimony, is a circumstance that indicates the trustworthiness of the documents.

Id. This court concluded that Patterson's testimony satisfied the three Behrendt requirements and "[t]he ICA should have held that Caliber's incorporated records, as authenticated by Salyers and Patterson's testimony, were admissible under HRE Rule 803(b)(6)." Id. at 327, 489 P.3d at 431 (footnote omitted).

Here, like the declarations in Verhagen, the Mountes and McCloskey Declarations satisfy the first two Behrendt requirements.[17] Both declarations stated that some of the business records regarding Yata's loan were "created by a prior servicer" and "were integrated and boarded into SLS's systems, such that the prior servicer's records concerning the Loan are now part of SLS's records." Both declarations further stated that

> It is the regular business practice of SLS to integrate prior servicers' records into SLS's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SLS as part of SLS's business records.

In addition, McCloskey stated he was "familiar with the record-keeping systems that prior servicers used to create and record information related to residential mortgage loans that it

---

[17] In addition, Mountes and McCloskey were qualified witnesses because they had knowledge of SLS's record-keeping system and described SLS's incorporation of prior loan servicer's documents. See Verhagen, 149 Hawaiʻi at 327 n.8, 489 P.3d at 430 n.8 (citing State v. Fitzwater, 122 Hawaiʻi 354, 366, 227 P.3d 520, 532 (2010), as amended (Apr. 5, 2010) ("The phrase 'other qualified witness' is given a very broad interpretation. The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.") (cleaned up)).

29

serviced, including the process by which information was entered into those systems and how those records were maintained." The Mountes and McCloskey Declarations demonstrate that SLS "incorporated and kept the documents in the normal course of business" and "typically relies upon the accuracy of the contents of the documents," and "[t]he first two requirements for admission of incorporated records are thus satisfied." Id. at 326, 489 P.3d at 430 (citing Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97).

However, the Mountes and McCloskey Declarations do not provide sufficient "circumstances [that] indicate the trustworthiness of the documents." Id. With regard to circumstances indicating trustworthiness, the Mountes and McCloskey Declarations state that "SLS maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records." The declarations in Verhagen provided specific methods of validation of documents from the prior loan servicer, "including, but not limited to, going through a due diligence phase, review of hard copy documents, and review of the payment history and account of other fees, costs, and expenses charged to the Loan by Prior Servicer." Id. The Mountes and McCloskey Declarations merely assert that SLS has "quality control and verification procedures" to ensure the accuracy of incorporated records

without stating what those procedures are. This court noted that the testimony indicating circumstances of trustworthiness in Verhagen was "scant" and "nebulously described" circumstances of trustworthiness. Id. Here, there is even less testimony describing circumstances of trustworthiness. Thus, it appears that the third Behrendt requirement was not satisfied, and the documents attached to the Mountes and McCloskey Declarations were not admissible. See id. at 327, 489 P.3d at 431.

   2.   **Even if Deutsche Bank's documentary evidence was admissible, that documentary evidence was insufficient to establish Deutsche Bank's possession of the Note when it filed the Complaint.**

      In Verhagen, this court determined that "[t]he evidence, taken together, shows U.S. Bank had standing at the time it filed suit." Id. This court noted that "a foreclosing plaintiff must establish its standing to bring a lawsuit at the commencement of the proceeding, not merely at the summary judgment stage."[18] Id. (citing Reyes-Toledo, 139 Hawaiʻi at 369, 390 P.3d at 1256). This court pointed out that:

_____

[18]    This court pointed out that "the requirement of standing overlaps with a plaintiff's burden of proving its entitlement to enforce the subject promissory note. Verhagen, 149 Hawaiʻi at 327, 489 P.3d at 431 (citing Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 367, 390 P.3d 1248, 1254 (2017)). This court noted that "[w]hether a party is entitled to enforce a promissory note is determined by application of [Hawaiʻi Revised Statutes] § 490:3-301, which provides:

        "Person entitled to enforce" an instrument means
        (i) the holder of the instrument, (ii) a nonholder in
        possession of the instrument who has the rights of a
        holder, or (iii) a person not in possession of the
        instrument who is entitled to enforce the instrument

31

U.S. Bank maintains that, at the time it initiated suit, it was entitled to enforce the Note because it held the indorsed-in-blank Note.  U.S. Bank supports this claim with the following evidence: <u>(1) Jennifer Martin's February 9, 2016, certification certifying, under penalty of perjury, that at 12:51 p.m. on February 9, 2016, she personally verified Caliber's possession of the original Note and attaching an indorsed-in-blank copy of the Note; (2) a bailee letter dated December 9, 2016, establishing that Caliber sent the Note to U.S. Bank's counsel at that time; and (3) Patterson's sworn testimony that, based on her review of Caliber's records, and her knowledge of how those records are made and maintained in the ordinary course of business, "Plaintiff, or its agent on Plaintiff's behalf, was in possession of the original wet-ink, indorsed in blank Note when the [Verhagen] foreclosure action was commenced on March 23, 2016, and since."</u>

<u>Id.</u> (bracketing in original) (emphasis added).  This court then determined:

> . . . Patterson testified that based on her knowledge of Caliber's records and record-keeping practices, U.S. Bank had actual or constructive possession of the Note at the time it filed the complaint.  Such testimony, standing alone and uncorroborated by documentary evidence, would be insufficient to establish U.S. Bank possessed the Note when it filed the complaint.  <u>Here, however, there is admissible documentary evidence showing that U.S. Bank possessed the Note both a mere six weeks before the filing of the complaint and at the time of summary judgment.</u>  Collectively, the evidence presented by U.S. Bank thus establishes the bank's possession of the Note on the day the complaint was filed.[19]

---

pursuant to section 490:3-309 or 490:3-418(d).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

<u>Id.</u> at 327, 489 P.3d at 431.

[19]   This court went on to note that "a defendant may counter this inference of possession at the time of filing with evidence setting forth 'specific facts showing that there is a genuine issue' as to whether the plaintiff actually possessed the subject note at the time it filed suit."  <u>Verhagen</u>, 149 Hawai'i at 328, 489 P.3d at 432 (citation omitted).  However, Yata did not need to counter an inference of possession because Deutsche Bank failed to produce sufficient evidence of possession of the Note when it filed the Complaint.

Id. at 327-28, 489 P.3d at 431-32 (footnote omitted) (emphasis added).

Here, in contrast to Verhagen, the Certification attached as Exhibit 8 to the Mountes Declaration was dated December 18, 2013, nearly nine months before the Complaint was filed on September 10, 2014. The Verhagen court concluded that U.S. Bank established possession of the note on the day the complaint was filed partly because the certification in that case "predates the filing of the complaint by less than two months." Id. at 328 n.10, 489 P.3d at 432 n.10. This court further noted that "[a]n older certification, and a correspondingly larger gap between the certification's date and that of the complaint, would leave more room for a 'genuine issue' as to whether U.S. Bank actually possessed the Note when it sued Verhagen." Id. As discussed above, the Certification in this case predates the filing of the complaint by nearly nine months, which is significantly more than two months. Thus, there is more potential for a "genuine issue" as to whether Deutsche Bank possessed the Note when it filed the Complaint against Yata. See id.

In addition, Yata correctly contends that the screenshots attached as Exhibit 2 to the McCloskey Declaration are unclear and do not establish Deutsche Bank's possession of the Note when it filed the Complaint. The McCloskey Declaration

33

does not explain where the screenshots came from or how to interpret the screenshots. Without such an explanation, it is unclear how the screenshots demonstrate that Deutsche Bank had possession of the Note when it filed the Complaint.

Furthermore, in Verhagen, this court took into consideration U.S. Bank's possession of the note at the time of summary judgment when determining if U.S. Bank had standing. Id. at 328, 489 P.3d at 432. Here, the only evidence Deutsche Bank possessed the Note at the time of or after summary judgment was a declaration from Deutsche Bank's counsel, which stated that "[t]he Note, which is endorsed in blank, is currently being held by Law Offices of Marvin S.C. Dang, LLLC for Plaintiff." This declaration further stated that Deutsche Bank's counsel would "bring the original endorsed Note to the hearing on October 2, 2018." Deutsche Bank's counsel did not bring the original endorsed Note to the hearing. In contrast to Verhagen, there was no bailee letter demonstrating SLS sent the Note to Deutsche Bank's counsel after Deutsche Bank filed its Complaint, see id. at 327, 489 P.3d at 431, and there was no documentary evidence demonstrating Deutsche Bank had possession of the Note after it filed the Complaint.

In sum, there was more potential for a genuine issue regarding whether Deutsche Bank had possession of the Note when it filed the Complaint because the Certification predates the

filing of the Complaint by more than two months, the screenshot was unclear and did not establish Deutsche Bank's possession of the Note before or after it filed the Complaint, and the only evidence Deutsche Bank possessed the Note after the Complaint was filed was Deutsche Bank's counsel's conclusory declaration. Even if Deutsche Bank's documents were admissible, there is less evidence in this case demonstrating Deutsche Bank's possession of the Note when it filed the Complaint than in Verhagen. Thus, it appears that Deutsche Bank lacked standing to foreclose against Yata because Deutsche Bank did not establish it possessed the Note when it filed the Complaint.

### IV. CONCLUSION

For the foregoing reasons, Deutsche Bank failed to establish standing when it filed the Complaint. Thus, we vacate the ICA's July 11, 2022 Judgment on Appeal, which affirmed the circuit court's Order Granting Motion for Summary Judgment and Order Denying Motion for Reconsideration. The case is remanded to the circuit court for proceedings consistent with this opinion.

Keith M. Kiuchi
for petitioner

Marvin S.C. Dang
and Amy Jackson
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

